NOT FOR PUBLICATION (Doc. No. 24)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WANDA LEWIS, | |
| Plaintiff, | Civil No. 08-2197 (RBK/KMW) |
| v. | **OPINION** |
| THE FIRST MONTGOMERY GROUP, WESTGATE VILLAGE APARTMENTS, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter arises out of a slip and fall accident where a tenant claims to have slipped on a patch of ice and snow on the property of her apartment complex. Presently before the Court is Defendant The First Montgomery Group's ("Defendant") Motion for Summary Judgment. For the reasons expressed below, the Motion is denied.

I.   BACKGROUND

Plaintiff Wanda Lewis ("Plaintiff") filed this action after a slip and fall accident in the parking lot of her apartment complex. At the time of the accident, Plaintiff was residing in Frazer, Chester County, Pennsylvania, at the West Gate Village Apartments, which is a complex owned and managed by Defendant.

Plaintiff describes the weather conditions for the week leading up to the accident by citing

1

to local climatological data from the National Oceanic and Atmospheric Administration. On February 14, 2007, one week before Plaintiff's slip and fall, Chester County received 2.3 inches of snow and 1.51 inches of rain. On February 15, 2007, 0.2 inches of snow and 0.32 inches of rain fell in Chester County, leaving 5 inches of accumulated snow and ice on the ground. On February 18, a brief snow flurry left no measurable amount of snow on the ground, and on February 19, 2007, trace amounts of snow and rain fell in Chester County. On February 21, 2007, the day of the accident, 0.05 inches of rain fell.

      Plaintiff testified that after the storm on February 14, 2007, she saw Defendant's maintenance man plow the parking lot leaving snow beneath and behind the parked cars that were in the lots. She then had to borrow a shovel in order to dig her vehicle out of the snow that was plowed behind it. James Kauffman, who served as Defendant's maintenance man at the time of the accident, testified to the snow cleaning protocol at West Gate Village and how he worked to keep the grounds clear of snow and ice. Kauffman stated that he and his only assistant, Jason Pappa, did not have adequate manpower to clean the premises, and he often hired some younger residents to shovel walkways. Plaintiff telephoned management at West Gate Village on two separate occasions in the week preceding her fall to complain about the conditions of the parking lots and walkways.

      On the morning of February 21, 2007, Plaintiff walked to her vehicle that was parked in the lot closest to her apartment, and she drove to work without any problems. Plaintiff returned home from work around 5:30 p.m. and again parked in the parking lot closest to her apartment. At approximately 7:15 p.m., Plaintiff walked to her vehicle and drove to her bible study class. Plaintiff returned from her bible study class at some time between 8:00 p.m. and 8:45 p.m. and

had to park in a lot that was further away because the lot closer to her apartment was full. Plaintiff testified that all of the remaining available spots all looked the same: the parking spots had ruts in the snow but there were also portions of asphalt that were visible. Plaintiff testified that the parking lot generally had ruts and ridges of ice and snow. After she parked, Plaintiff exited and slowly walked to the rear of the vehicle where she fell to the ground. Plaintiff suffered a laceration to her face, which required thirteen sutures, as well as pain to her upper torso. Plaintiff testified that she did not recall examining the accident area and could not recall whether she slipped or tripped before falling to the ground. Plaintiff further testified that she assumed that the snow and ice that was on the ground caused her to fall. On February 22, 2007, Plaintiff reported the accident to one of the apartment managers, Amy Rodriguez, who filed an incident report stating that Plaintiff slipped on ice on the ground of the parking lot.

On January 29, 2010, Defendant filed the Motion for Summary Judgment. Plaintiff responded by filing a brief in opposition on February 26, 2010. Defendant then filed a reply brief on March 12, 2010. All parties having briefed the matter, the Motion is ripe for review.

## II.   STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' -that is, pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Id.

## III.   DISCUSSION

Defendant moves for summary judgment under Pennsylvania's "hills and ridges" doctrine, arguing that Plaintiff has not provided sufficient evidence to prove that snow and ice accumulated on the walkway in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to those traveling thereon. Def. br. at 3-4. Defendant further argues that Plaintiff is barred from recovery because she assumed the risk of walking on the ice and snow. Def. br. at 5. Plaintiff contends that the "hills and ridges" doctrine is not applicable under the facts of this case and also that she did not voluntarily assume any risk. Pl. br. at 6, 12. Before turning to the substantive matters, the Court must first address a choice of law procedural issue.

### A.   Choice of Law

Defendant raises the issue that this dispute is governed not by the laws of New Jersey, but

4

by the laws of Pennsylvania.  Def. br. at 2.  Defendant notes that Pennsylvania and New Jersey law conflict in that Pennsylvania provides for an absolute defense to a property owner under the "hills and ridges" doctrine if the plaintiff cannot satisfy all of the elements required.  Def. br. at 3.  Defendant further notes that Pennsylvania law provides for a complete defense under the assumption of the risk doctrine; whereas New Jersey does not allow for such a defense.  Def. br. at 3.  In her responsive brief, Plaintiff has seemingly conceded that Pennsylvania law applies and proceeded to argue the applicability of the "hills and ridges" doctrine.  Pl. br. at 6.  The Court agrees and will apply Pennsylvania law to the present dispute.

In a diversity case, a district court must apply the choice of law provisions of the forum state.  Woessner v. Air Liquide Inc., 242 F.3d 469, 472 (3d Cir. 2001) (citing Klaxon Co. V. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Robertson v. Cent. Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995)).  Because this Court is located in New Jersey, New Jersey's choice of law rules apply.  To resolve choice of law disputes arising out of tort, New Jersey utilizes the "most significant relationship" test set out in the Restatement (Second) of Conflict of Laws (1971) (the "Second Restatement").  P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 457 (N.J. 2008).  The most significant relationship test "directs courts to apply the law of the jurisdiction with the 'most significant relationship' to the issue before the court.  In making this determination, a court is required to consider all the contacts that each jurisdiction has with the issue."  Id. at 459 (citing Earl M. Maltz, Do Modern Theories fo Conflict of Laws Work?  The New Jersey Experience, 36 Rutgers L.J. 527, 530 (2005)).  The New Jersey conflicts analysis involves two steps.  First, a court must determine if an actual conflict exists between the potentially applicable laws.  Id.  at 460; RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco,

5

No. 09-cv-00431 (FLW), 2009 WL 2580354, at *5 (D.N.J. Aug. 19, 2009) (citing P.V.). If no conflict exists, then the court applies the law of the forum state and ends the conflict inquiry. See Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767, 771 (N.J. 2007). If a conflict does exist, then the court must weigh the factors enumerated in the Second Restatement that correspond to the cause of action. RBC Bank, 2009 WL 2580354, at *5 (citing P.V.).

In this matter, the inquiry is rather short because the parties do not dispute that New Jersey and Pennsylvania law conflict. Also, Pennsylvania has the "most significant relationship" with the issue before the Court. The accident occurred in Pennsylvania and involved a person who was a Pennsylvania resident at the time. The only connection to the forum state is that Defendant's principal place of business is located in New Jersey. Therefore, the Court will review the pending Motion under Pennsylvania law.

### B.  Hills and Ridges Doctrine

Pennsylvania law recognizes the "hills and ridges" doctrine, which protects landowners from liability after a recent precipitation when there are generally slippery conditions caused by snow or ice; provided, however, that the snow and ice has not been allowed to unreasonably accumulate in ridges or elevations. Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. Ct. 1987). The rationale behind the doctrine is that "'to require that one's walks always be free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere.'" Id. at 1088 (quoting Wentz v. Pennswood Apartments, 518 A.2d 314, 316 (Pa. Super. Ct. 1986)). If the doctrine is applicable, to maintain a claim a plaintiff is then required to prove that (1) snow and ice has accumulated on the walkway in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to

those traveling thereon; (2) the property owner had actual or constructive notice of the existence of this condition; and (3) the dangerous accumulation of ice and snow caused plaintiff's injuries. Rinaldi v. Levine, 176 A.2d 623, 625 (Pa. 1962).

Defendant moves for summary judgment arguing that the "hills and ridges" doctrine applies under the facts of this case and that Plaintiff cannot provide any evidence to satisfy the first element of the doctrine. Plaintiff responds that the "hills and ridges" doctrine is not applicable in this case, but even if it is, she has provided enough evidence to meet her burden of proof. The Court concludes that genuine issues of material fact exist as to whether the "hills and ridges" doctrine is applicable here. Accordingly, Defendant's Motion for Summary Judgment is denied.

First, a question remains as to whether Plaintiff's accident occurred when there were generally slippery conditions in the community as is required for the proper application of the "hills and ridges" doctrine. See Comer v. Boro Developers, Inc., CV. No. 09-00415, 2010 WL 1948328, at *4 (E.D. Pa. May 14, 2010) (denying summary judgment because even when the evidence is viewed in the light most favorable to plaintiff, a reasonable juror could conclude that generally slippery conditions did not exist in the community); Herbst v. Inven Assocs., 35 Pa. D. & C.4th 167, 169 (1998) (holding that because there were genuine issues of material fact as to whether the conditions were generally icy when plaintiff fell, and thus whether the hills and ridges doctrine should be applied, summary judgment was inappropriate).

Plaintiff argues that the "hills and ridges" doctrine is not applicable because there is no proof of any recent precipitation that could have caused a generally slippery condition in the community. Pl. br. at 7. Defendant responded that the climatological data cited from the

7

National Oceanic and Atmospheric Administration shows that there was indeed recent precipitation that caused a generally slippery condition in the community.  Def. reply br. at 1.  However, over a week passed between the last significant snow fall in Chester County and Plaintiff's slip and fall.  On the day of the accident only 0.05 inches of rain fell in Chester County.  In addition, Plaintiff testified that it was always very slippery and treacherous in the parking area.  Pl. Dep. at 14: 10-11.  Plaintiff even called to complain about the conditions of the parking lot on two separate occasions before the day of her accident.  Pl. Dep. at 21: 8-10.  A reasonable juror could conclude that the slippery and treacherous conditions were not caused by a recent snowfall, but rather because the snow and ice were unreasonably allowed to accumulate over some time.  If the grounds were not properly maintained for an unreasonable period of time, the hills and ridges doctrine does not apply.  See Goggans v. U.S., CV. No. 87-7423, 1990 WL 18873, at *1 (E.D. Pa. Feb. 26, 1990) (holding that fifteen hours was sufficient time to clear the snow, thus preventing the application of the "hills and ridges" doctrine); Herbst, 1998 WL 663281, at *5 (holding "hills and ridges" is not applicable where plaintiff testified that an icy condition consistently existed on the parking lot throughout the entire winter due to poor maintenance).

     Secondly, a question remains as to whether Plaintiff's fall was caused by the entirely natural accumulation of ice and snow, which is another requirement that must be satisfied for the "hills and ridges" doctrine to be applicable.  See Bacsick v. Barnes, 341 A.2d 157, 160 (Pa. Super. Ct. 1975) (holding that application of the doctrine is only appropriate where the snow and ice complained of are the result of an entirely natural accumulation, following a recent snowfall).  Plaintiff testified that she saw the maintenance man plow the parking lot, pushing snow beneath

and behind the cars that remained parked there. Pl. Dep. at 15: 14-16. Plaintiff stated that one day she needed to borrow a shovel from her neighbors to try and dig the car out from the snow that was plowed behind it. Pl. Dep. at 17: 2-13. Plaintiff also testified that the "ruts and ridges" that existed in the parking lot were from when vehicles drove over the piles of snow that had accumulated behind them. Pl. Dep. at 24-25: 22-24, 1. Thus, a question remains as to whether the conditions of the parking spot where Plaintiff fell were entirely the result of a natural accumulation or if the conditions were caused by human interference. Therefore, the applicability of the "hills and ridges" doctrine is in question. See Harvey v. Rouse Chamberlin, Ltd., 901 A.2d 523, 527 (Pa. Super. Ct. 2006) (holding that the black ice that developed after a snowfall and subsequent plowing of the roads was not the result of entirely natural accumulation and therefore plaintiff's negligence action was not precluded under the "hills and ridges" doctrine because the condition of the land was influenced by human intervention).

Because there are genuine issues of material fact as to whether the "hills and ridges" doctrine is applicable in this case, summary judgment must be denied.

### C. Assumption of Risk

Nonetheless, Defendant further asserts that Plaintiff is also barred from recovery because she assumed the risk by parking in a space that she knew had snow and ice on it. Plaintiff responds that she did not assume the risk because she was forced to park in the spot where she fell since there were no other safe spots in the lot. The Court does not believe that it is beyond question that Plaintiff voluntarily and knowingly proceeded to park in a space that was obviously dangerous. Accordingly, summary judgment is not appropriate.

Making the determination that a plaintiff has assumed the risk can only occur where it is

beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous conditions.  Barrett v. Fredavid Builders, Inc., 685 A.2d 129, 131 (Pa. Super. Ct. 1996).  There are two components to the assumption of the risk doctrine: (1) the risk must be perceived and (2) the risk must be faced voluntarily.  Id. at 131.  In the present case, it is not clear if Plaintiff made a truly voluntary decision to park in the particular spot where she fell.  See Kaplan v. Exxon Corp., 126 F.3d 221, 226 (3d Cir. 1997) (reasoning that among the circumstances to consider in evaluating the voluntariness of plaintiff's actions is whether the plaintiff had a real choice) (citing Howell v. Clyde, 620 A.2d 1107, 1112 (Pa. 1993))).

      Plaintiff testified that the parking spots that were free of ice and snow were taken, and the remaining spots all looked the same with "patches of snow and ice" on them.  Pl. Dep. at 30: 19-23.  Other than stating that Plaintiff could have parked in one of the safer spots as she did earlier in the day, Defendant does not present further evidence of any other reasonable alternative.  Where a plaintiff has no reasonable alternative, there may not be an assumption of the risk.  See Kaplan, 126 F.3d 226, 227 (holding that if plaintiff had no reasonable alternative to climbing a snow mound in order to get to bus stop, a jury could find she did not act voluntarily and therefore did not assume the risk); cf. Carrender v. Fitterer, 469 A.2d 120, 122 (Pa. 1983) (holding that appellee assumed the risk when she parked her car in an icy parking spot when she was aware that several other convenient parking spaces free of ice were available); Freudenvoll v. Stavros, 49 Pa. D. & C.4th 328, 338 (2000) (granting summary judgment where plaintiff's presence at a pizzeria was purely social, plaintiff made the choice to enter knowing that she would have to walk over snow to exit).

      Here, when viewing the evidence in the light most favorable to Plaintiff, it would be

reasonable to conclude that Plaintiff was not faced with a voluntary choice, similar to the circumstances in Kaplan.  Even if Plaintiff were capable of parking in the street, or in some other location, Plaintiff would still potentially have had to walk across the dangerous ice and snow in order to get to her apartment.  Plaintiff lived at the apartment complex, which is not like the plaintiff in Freudenvoll who went to a pizzeria for social purposes and chose to walk across snow to enter.  Also, unlike in Carrender, Plaintiff did not have a choice between parking in a clean spot or an icy spot because all of the spots free of snow and ice were already taken.  Therefore, reasonable minds could differ as to whether Plaintiff "voluntarily" assumed a risk.  Whether Plaintiff's beliefs and actions were reasonable involve negligence principles for a jury to resolve. Barrett, 685 A.2d at 132.  In sum, Plaintiff's claim is not barred by assumption of the risk as a matter of law.

### IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED.**  An appropriate order shall follow.

Date:   8/11/10

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge